THORP and others, EXECUTORS of AMOS, *v.* AMOS and others.

The donee of a gift, *mortis causa*, is not a competent witness in behalf of herself or others interested in the gift, to sustain it, in a suit by executors against the recipients of the fund ; nor does the execution by her of a release to infant legatees, who would be entitled to the fund under the will, render her competent.

The alleged *donatio mortis causa*, not sustained upon the evidence.

The donee, and a colluding executor, were held liable for the whole sum, although they had distributed it among themselves and the others ; but they were permitted to be subrogated to the complainants' remedy against the latter.

Some of the recipients were married women ;

*Held*, that they were liable as tort-feasors for the respective amounts received by them.

There is no lien in favor of the executors, upon life interests in real estate devised to the respective wrong-doers, by the testator.

A decree made against two of the complainants, who had received a portion of the alleged gift ; and the fund was ordered to be paid to two of the executors only, the other three having participated in the distribution, which was set aside.

May 8, 9, 10 ; May 15, 1843.

THE circumstances of this case are fully stated in the decision.

*W. L. Morris,* for self and the other executors.

*H. F. Clark,* for the executors, and for sundry infant defendants.

*E. S. Derry* and *C. O' Conor,* for Willoughby and wife.

*J. Leveridge,* for Mrs. Thompson.

*Dan Marvin,* for Miller and wife.

*W. B. Aitken,* for Van Beuren and others.

*P. Milspaugh,* for Elizabeth Amos.

*J. C. Devereux, Jr.,* for Fleming and others, and for several infant defendants.

*J. W. Brown,* for other infant defendants.

*W. S. McCoun,* for all the other defendants.

THE ASSISTANT VICE-CHANCELLOR.—This is a contest between the children and the grand-children of Richard Amos, deceased. The bill was filed to obtain a construction of his will, and, among other things, charged that his daughter, Mrs. Thompson, had at his death $30,000, in cash, belonging to him, which she claimed was given to her by the testator a short time before that event, with a direction to divide the same immediately after his death among his children. That she had accordingly divided $19,980 among them, and subsequently, on the demand of the executors, had delivered to them $9,950 more, on condition that they should deposit it in the Greenwich Bank, to abide the decision of this court respecting the donation. The bill charges, that the $30,000 is a

part of the personal estate of the testator. Mrs. Thompson, Van Beuren, and the other defendants, children of the testator, answered the bill, and set up that the $30,000 was given to them, *mortis causa*, by the testator in his last illness, and each of the children admits the receipt of the one-ninth part of the $19,980, which Mrs. Thompson distributed among them, as alleged in the bill. About fifty grand-children were made parties, of whom all but three were infants, and put in general answers.

The cause was heard by my predecessor* on pleadings and proofs, and a decree made, declaring and establishing the trusts of the will. A separate order was also made, referring it to a master to take proofs, and ascertain and report whether the testator made the gift of the $30,000 mentioned in the answers of Van Beuren and Mrs. Thompson. This direction was given in consequence of the infant defendants, against whom there was no proof of the donation.

The cause now comes before me on the report of the master, who certifies to the court, that the testator did not make the gift alleged, or any such gift.

The disposition of his property, made by the testator in his will, causes this question to be presented in a manner very unusual. To each of his children living, he gave a life interest in distinct portions of his real estate ; and after some other devises, he gave all the residue of his estate to his wife for life, and after her death, to be equally divided between all his grand-children. His children, therefore, would receive no part of this fund under the will ; and all of them who were defendants, insist on the validity of the donation. The grand-children are all interested to defeat the gift. Of the complainants, Thorp and wife, and R. Amos, have the same interest as the other children ; and Thorp, Amos and Van Beuren, being a majority of the executors, are directly opposed in interest to the whole mass of grand-children. The contest before the master was therefore in fact, although not in form, a contest between the testator's children on the one side, and his grand-children on the

---

* The Hon. Murray Hoffman.

other. And, as the latter were nearly all infants, it was necessarily conducted without much reference to the issues made by the pleadings in the cause.

The only witness, called to prove the fact of the gift by the testator, is his daughter, Mrs. Thompson, one of the defendants. And the first question presented in the case, is in regard to her competency as a witness. To obviate the objection on that ground before the master, she produced and furnished to him a release in due form, whereby she released and made over to her infant children, all her share, right and title in the $20,000 divided among the testator's children, in pursuance of the alleged gift, and in the remaining $10,000 embraced in the gift, and deposited in the bank. I cannot perceive how the execution of this release affected her interest in the cause. The delivery of the instrument to the master availed nothing : he did not represent the infants. No person assented for them to the reception of the release. Probably there was no person in existence, who could give any valid assent, so as to render the execution and delivery of the deed complete. Certainly no one, who had the legal capacity to act for the infants, would yield his assent to a proceeding, by which the mother relinquished to her children about $200 each, in order to make herself a competent witness, to deprive them of nearly three times as much by her testimony. Her making over to them her share of the $19,980, which she had received six years before, and which her counsel now insists went into her then husband's hands, and was spent by him, was a solemn mockery of the forms of justice.

In order to make Mrs. Thompson a competent witness, she should have been released by the parties, to whom she was liable in respect of the subject matter of her testimony. She was testifying to defeat a claim of the executors, for which she was chargeable in the first instance; and I do not think that she was a competent witness to support the donation, either in her own behalf, or in behalf of the parties to whom she distributed the fund.

This disposes of the defendant's claim, founded upon the existence of the donation. I will add, that assuming Mrs. T.

to have been a competent witness, I concur fully in the conclusion of the master upon the testimony.

The facts related by Mrs. T. are strange, inconsistent and improbable. She is contradicted in many important particulars by the other witnesses. Her concealment of the existence of the money and of the gift as now set up, during the testator's illness and for several weeks after his death, and until after considerable excitement had arisen among his children, who were confident that the testator had a large sum of money in his possession just before his death and who suspected foul play; and the very extraordinary mode then resorted to by her for the distribution of the $20,000; evince an intention originally to appropriate the money to her own use, or to share it with Van Beuren only. The reason given by her for dividing only $20,000 of the fund at that time, is unsatisfactory. It is quite as probable that she thought the distribution of that sum would allay the excitement and stifle all further inquiry. The testator's son, Samuel Amos, was included in the distribution, although not one of the objects of the testator's gift, when it was first made, as related by Mrs. T. By giving him a share of the money, there would remain no person, who it was probable, would question the donation. Again, the testator had the $30,000 in bank notes about his person, and the evidence is strong, that the money was taken from him when he was delirious or in a stupor. The learned counsel for Willoughby and wife argued with great ingenuity and much force, that the reasonableness and probability of the alleged gift strongly corroborated the testimony of Mrs. T. There was some evidence tending to show that the testator would have divided this money or a part of it among his children at some future time, but it is entirely too slight to aid in sustaining the impeached testimony of Mrs. T. I consider her testimony unworthy of credit.

Another ground for the decision of the master, was the incompetency of the testator to make a will or to transact any business during his last illness. He was injured by a fall upon the back part of his skull, which produced a disorder of the brain, and terminated in his death, three weeks after the accident. A physician was summoned immediately, who saw him from two

to four times a day during his whole illness. A second physician attended in consultation, generally twice or three times a day, till his death. The physicians, seeing a lawyer at the testator's house the day that the accident occurred, and knowing that the testator had a very large estate, suspected that a testamentary disposition of his property was in contemplation. They supposed that they would be called upon as witnesses in reference to the testator's situation and mental condition, and they felt it to be their duty to be attentive and observant of the state of his mind, and to preserve their impressions on the subject. They therefore testify on this point with unusual advantage to the cause of truth, and they concur in saying that the testator was not competent to transact any business at the time this gift is alleged to have been made, and their evidence is entirely conclusive against the mental capacity of the testator to make such a gift of his property.

An objection was interposed to this evidence, on the ground that the question was not put in issue by the pleadings. As it was directly within the scope of the inquiry referred to the master, it is unnecessary to consider the objection.

The master's report must be confirmed.

An important point then arises in the case—how shall this money be recovered by the executors, and from whom?

It is insisted on behalf of the grand-children that each of the children is liable for the respective proportions of the $19,980 received by them, and that Van Beuren and Mrs. Thompson are responsible for the whole sum, or for so much as cannot be collected of the others; and that the life estates of the children in the respective premises devised to their separate use, or in trust for them by the testator, should be charged by the decree with the repayment of the sums for which they are liable. On the other hand, it is claimed that there is no liability for the whole sum, attaching either to Van Beuren or Mrs. T.; and that in respect of the testator's daughters, who were married at the time of the distribution made by Mrs. T., they are not liable at all, and that the decree must go against their respective husbands only.

First. In reference to Van Beuren and Mrs. Thompson—the

direct evidence in the case to charge Van Beuren with inter-meddling with the money, is in the testimony of Mrs. T., which is to be laid out of view entirely. In the absence of proof of the alleged gift, the conduct of Van Beuren is extremely reprehensible. He was the agent and confidential friend of the testator, and as one of the executors, was about to take an oath faithfully to discharge the duty of that office; yet he connived at the illegal disposition of the fund made by Mrs. T., and colluded with her to violate his trust and deprive his own children of the bounty of the testator. In his answer he admits by implication that this money had been in his possession. Whether it had or not, it was his plain and imperative duty, on qualifying as executor, to have made known to his co-executors the existence and situation of this fund, and to have united with them in prompt and energetic measures for its recovery.

I do not think that I shall do him any injustice if I hold him responsible jointly with Mrs. Thompson for the money which she distributed to herself, to the wife of Van Beuren, and to the other children. Then as to Mrs. Thompson, she is responsible as a *wrong-doer*, (2 R. S. 449, § 17.) As was said by Sir Matthew Hale, in his celebrated judgment in *Scot* v. *Manby*, (1 Sid. 109 ; S. C. 1 Lev. 4, and 1 Keb. 69, 80,) " in case of a wrong, the wife binds herself, for she must be joined in the action, and so she will be more careful not to subject herself than when the husband is charged alone." And courts of equity have long acted upon that principle. See Ch. Ca. 80, *Gilpin* v. *Knight* ; 1 Vern. 143, *Lord Paget* v. *Read*. Mrs. T.'s coverture, at the period in question, is therefore no answer to her liability for interfering with the property of the testator.

The other children, who were married women, are also liable for the sums which they received. Each knew perfectly well, that those sums were a part of the property and effects of the testator, and each retained her share, and insisted upon it as her right, instead of delivering it to the executors. The receiving, taking, or interfering with the effects, constitutes the wrong by the Revised Statutes ; and the question upon the liability of a married woman, for a conversion of property which came rightfully, or without a tort, into her possession, does not arise

in this case. The executors, having traced the funds into the hands of these parties, are entitled to a decree against them for the repayment of the same. Mrs. Thorp, one of the children, was made a complainant. Her interest in the alleged gift is wholly adverse to that of the executors, and she has had no opportunity to claim or contest her rights. There can be no decree against her in this suit, and the decree must provide leave for the executors, (or Mrs. Thompson and Van Beuren, on their paying Mrs. Thorp's share of the delinquent fund to the executors,) to prosecute Mrs. Thorp in this behalf, if they shall be so advised. Van Beuren and Mrs. Thompson will, in this suit, be subjected in the first instance to the payment of the $2220, received by Mrs. Thorp, and the complainant Thorp, being jointly liable with his wife for the amount, will also be declared liable here.

The executors cannot recover interest on this fund during the lifetime of the widow of the testator, she being entitled to the whole income, and having released and transferred it to her children. It was stated at the hearing, that she died a few weeks previous to the argument: From the time of her death the parties, liable to refund, ought in strictness to pay interest. It was not claimed at the hearing, and the decree therefore will not direct the payment of interest prior to its entry. As to costs.—The costs of the complainants and of the grand-children, may be paid by the executors out of the fund provided in the will for the payment of expenses.

The decree will declare that Van Beuren and Mrs. Thompson are liable to the executors for the whole sum of $19,980, with interest, from the entry of the deceased. That George B. Thorp, Richard Amos junior, Mrs. Van Beuren, Mrs. Hooker, Quackenboss and wife, W. R. Miller and wife, Willoughby and wife, and Samuel Amos, are severally liable for the $2220 received by them respectively, with interest, from the entry of the decree. In case the whole or any part of these several amounts shall be collected of the parties last mentioned, Van Beuren and Mrs. Thompson are to be exonerated, *pro tanto ;* and if they are compelled to pay any sum in respect of the amounts, which, as between them and the other parties, ought

to be paid by the latter, they are to be subrogated to the complainant's remedy for such sum. As a general rule, equity will not interfere to enforce a contribution between wrong-doers. *Peck* v. *Ellis*, (2 J. C. R. 131;) *Dupuy* v. *Johnson*, (1 Bibb, 562.) But I deem this case more analogous to actions of trover and actions on the case against common carriers, and similar instances of *quasi torts*, than to cases of fraud or moral turpitude. I do not feel free from doubt on the subject, although I conclude that it will be most equitable to direct the contribution.

I do not perceive any mode, by which the amount due to the complainants, can be declared to be a lien on the life interests of the children under the will of Richard Amos. The complainants must pursue the usual course for enforcing decrees of this court.

(A decree was entered accordingly, which directed the fund to be paid to Morris and Reeve, the two executors, who had not shared in the distribution of the alleged donation.)